Healey vs. Butler, Garnishee, etc.

HEALEY, Appellant, vs. BUTLER, Garnishee, etc., Respondent.

*March 18 — April 6, 1886.*

*(1) Proof of service of summons: "Usual place of abode." (2, 3) Garnishment: Amount of recovery: Attacking mortgage for fraud.*

| 66 | 9 |
| 75 | 214 |
| 66 | 9 |
| 79 | 443 |
| 66 | 9 |
| 96 | 179 |
| 66 | 9 |
| 108 | 184 |

1. An affidavit of service stated that on a certain day, "in the town of Unity, Clark county," the affiant served the summons on the defendant "by then and there delivering to and leaving with [his wife], *at the last and usual place of abode of said defendant in said Clark county,* a true and correct copy of said summons," etc. *Held,* that the affidavit showed that such copy was left "at his usual place of abode," as required by subd. 4, sec. 2636, R. S.

2. When a garnishee is or may be indebted to the principal defendant under certain contracts between them, which are not claimed to be tainted with fraud, the plaintiff occupies the same position as the defendant in respect to such contracts, and can recover from the

garnishee no more than the defendant might recover had he brought an action thereon.

3. But the plaintiff, if a creditor of the defendant at the time of the execution of a chattel mortgage by him to the garnishee, may attack such mortgage as fraudulent, and the relief he may have in such case is not limited to that to which the defendant would be entitled.

APPEAL from the Circuit Court for *Portage* County.

The plaintiff commenced an action on a money demand against N. B. Peterson, and at the same time instituted a garnishee proceeding against the respondent, *R. D. Butler*, who filed his answer therein, denying that he was indebted to Peterson, and stating, in detail, certain contracts and transactions with him. The plaintiff took issue thereon. The opinion contains a sufficient statement of the material portions of the answer, and of the testimony.

The summons in the original action was served by a private person, whose affidavit of the service thereof states that he made such service on a specified day, and at a specified place, in Clark county, "by then and there delivering to and leaving with Mary Peterson, at the last and usual place of abode of said defendant Peterson, in said Clark county, a true and correct copy of said summons," etc. In all other respects the affidavit shows a regular and valid service of the summons. The defendant, Peterson, not appearing in the action in due time, the plaintiff obtained judgment against him therein by default. Summons and affidavit in the garnishee proceedings were attempted to be served upon Peterson with the summons in the original action against him, by the same person, and the affidavit and return of such service is the same as in the original action.

After judgment in the original action the garnishee action was tried by the court and a jury. When the plaintiff offered in evidence the judgment roll in the former action, the garnishee, *Butler*, objected to its admission for the rea-

son that "the proof of the service of the original summons was defective in not showing the service at the usual place of abode of the defendant." Thereupon, on motion of plaintiff, the court allowed the defendant, Peterson (who was present, and immediately thereafter testified as a witness on such trial), to enter a general appearance in the original action, and to admit service of the summons therein as of the day mentioned in the affidavit of such service. This being done, the court overruled the objection, and the judgment roll was received in evidence. No objection was made on the trial that the proof of service of the garnishee summons on Peterson was insufficient.

At the close of the testimony the court directed the jury to return a verdict for the garnishee, *Butler*, which they accordingly did. The plaintiff appeals from a judgment against him entered pursuant to the verdict.

For the appellant there were briefs by *Jones & Sanborn*, and oral argument by *Mr. Jones*. To the point that when personal property is conveyed in fraud of creditors, it can be reached by garnishment, although the grantor could not reclaim the goods himself, they cited *Keep v. Sanderson*, 2 Wis. 42; *Prentiss v. Danaher*, 20 id. 311; 12 Mass. 140; 4 id. 508; 16 id. 320. Plaintiff, who is a creditor of the mortgagor, may attack the mortgage even when mortgagee is in possession. *Jewett v. Fink*, 47 Wis. 446.

*Frank M. Hoyt*, attorney, and *David S. Ordway*, of counsel, for the respondent.

LYON, J. 1. The judgment against Peterson in the original action, having been entered by default, and Peterson not having appeared in the action, is void unless a proper service of the summons therein is shown by the return, or, that failing, unless the subsequent appearance and admission of service by Peterson cures the defect. If that judgment is void, there is no foundation for the garnishee

judgment, and the garnishee proceedings should have been dismissed. Further, if the record fails to show. that the garnishee summons was properly served upon Peterson, and if he did not appear in the garnishee proceedings, the garnishee judgment is void. R. S. sec. 2756.

The only objection made to the affidavit of service of the summons upon Peterson, in either action, is that it fails to show that copies thereof were left "at his usual place of abode," as required by statute. R. S. sec. 2636, subd. 4. The proof of service upon Peterson in each case is that the summons was served, in the town of Unity, in Clark county, "at his last and usual place of abode in said Clark county." It is argued on behalf of the garnishee that this does not show service at the usual place of abode of Peterson, but only at his last and usual place of abode in Clark county; and that the proof is not inconsistent with the hypothesis that Peterson then had a "usual place of abode" in some other county of the state. This is altogether too nice a criticism upon the language employed in the affidavits of service. The plain, obvious meaning of the language is that the service was made at Peterson's last and usual place of abode, and that such place of abode was then in Clark county. The words "last and" are mere surplusage. The last and usual place of abode of a person is necessarily his present usual place of abode. This construction of the language employed in the affidavits of service is so manifestly reasonable that we should decline to follow adjudications elsewhere to the contrary; but we have been referred to none which fully assert the doctrine here contended for by counsel.

The cases cited which come nearest sustaining the position of the garnishee are *Sanborn v. Stickney*, 69 Me. 343, and *Ames v. Winsor*, 19 Pick. 248; but in each of these cases the residence of the defendant was stated in the writ to be in one county, and the return to the writ showed a

service thereof in another county. It was held that the presumption was that the defendant was at the time dwelling in the county specified in the writ, and hence that service at his last and usual place of abode in another county failed to meet the requirements of the statute, which required service to be made at the "place of last and usual abode." We are not inclined to dissent from the doctrine of these cases, as therein applied.

In *Blanton v. Jamison*, 3 Mo. 38, the return of the sheriff was that he served the writ on the defendant by going to his house, and leaving a true copy of the summons with one of his family, etc. The statute of that state required that a true and attested copy of the writ should be left at the dwelling-house or place of abode of defendant, etc. The court says that the sheriff may not have gone to the *dwelling*-house of the defendant, or may not have left the copy *at* such dwelling-house or place of abode. This criticism upon the return seems to be well founded. In *Brown v. Langlois*, 70 Mo. 226, the return was that a copy of the writ, etc., was left at the usual place of abode of the defendant, *when in the city of Cape Girardeau.* The court very properly held that the italicised words in the return were fatal to the service. To hold otherwise would be to allow process to be served on a person residing and being in New York by leaving a copy thereof at the Park Hotel, in this city, if such person had occasionally been in this city, and when here was a guest of that hotel. In *Settlemier v. Sullivan*, 97 U. S. 444, the summons was served by leaving a copy at the usual place of abode of the defendant. The return was held to show no valid service for the reason, alone, that it failed to show the defendant could not be found. Neither of the above cases is authority for holding that the affidavits of service of the original and garnishee summons under consideration are defective. It must be held that the affidavits of service show a valid service of the summons in

each case upon the principal defendant, Peterson. Hence the trial court properly admitted the judgment roll in the original action on the trial of the garnishee action. We do not consider the effect of the subsequent appearance by Peterson in the original action, and his admission of service.

On the trial of the garnishee action, Peterson was present, and testified as a witness for the plaintiff, and then voluntarily entered his appearance and admission of service in the original action, for the purpose of saving the garnishee suit. During the same trial he made an affidavit of surprise in behalf of the plaintiff when some amendment to the answer of the garnishee defendant was proposed. We are strongly inclined to the opinion that these active interferences in the garnishee suit amount to an appearance by him therein, even though the garnishee summons was not properly served upon him. It is unnecessary, however, to determine this point, since the service is held sufficient.

2. We will now consider the case on the merits. The garnishee defendant, *Butler*, answered that he made two written contracts with Peterson,— one in October, 1882, and the other in November, 1883,— in one of which the latter agreed to cut and raft, and in the other to cut and haul, to a certain mill, the timber on lands of *Butler* in sections 10 and 11 of a certain township and range. Copies of these contracts are set out in the answer. They contain many details not necessary to be here stated. The answer further sets out a chattel mortgage on a large amount of property, executed by Peterson to *Butler*, April 3, 1884, to secure the latter for certain loans and advances made by him to Peterson, and for certain obligations incurred for him, and to secure the full performance of the two contracts before mentioned. *Butler* took possession of this property a few days later. He sold it under the mortgage after the garnishee summons was served upon him, and realized over $3,700 from the sale.

On the trial of the garnishee suit it appeared that Peterson never fully completed either of his two logging contracts with *Butler*, but that he left the state, and *Butler* completed them at large expense; also that *Butler* made large advances to him on account of such contracts, and incurred liabilities for him, and that he suffered damages by reason of Peterson's failure to perform his contracts. It also appeared that *Butler* and Peterson entered into another contract in the fall of 1883, not reduced to writing, in which Peterson agreed to get out logs, or he was employed to do so, from other lands of *Butler* in section 16 of the town and range mentioned in the written contracts, and that Peterson did considerable work under such parol contract or employment. There is a serious conflict in the testimony as to what were the terms of that contract. The testimony on the part of the plaintiff tends to show that no price was agreed upon for the work, but that it was to be compensated *quantum meruit*. The testimony on the part of the garnishee tends to show that it was agreed that all the terms and conditions of the written contract of November, 1883, should be applicable to the parol contract; that is to say, the parol contract merely extended that of November, 1883, to cover and include the timber on section 16 as well as that on sections 10 and 11.

The plaintiff also offered testimony to show that the chattel mortgage mentioned in the answer of the garnishee was executed by Peterson and received by *Butler* with the intent and for the purpose of hindering, delaying, and defrauding the other creditors of Peterson.

It does not seem to be seriously claimed by the plaintiff that he is entitled to recover anything on account of the two written contracts set out in the garnishee's answer. He does claim, however, to recover the unpaid value of the work done by Peterson on section 16 under the parol contract, and also sufficient of the moneys realized by *Butler*

from the sale of the mortgaged property to satisfy his judgment against Peterson, provided he succeeds in proving such mortgage fraudulent as to the creditors of Peterson. The direction to the jury to return a verdict for the garnishee, and the rejection of the testimony offered to show the mortgage fraudulent, negatived both these claims.

In respect to the three logging contracts, all of which are untainted with fraud, the plaintiff stands in the shoes of Peterson. He can recover just what Peterson could have recovered had the latter brought an action against *Butler* on those contracts, and no more. *St. Louis v. Regenfuss,* 28 Wis. 144. Assuming that the terms of the parol contract to get out logs from section 16 are as claimed by the plaintiff,— that is, that Peterson was to be compensated therefor *quantum meruit,*— and the contract was not made a part of the written contract of 1883, had Peterson sued *Butler* on such parol contract he would be entitled to be allowed in such action for the value of his work. Still, it would have been competent for *Butler* to counterclaim for his advances on the other two contracts, and his damages resulting from the nonperformance by Peterson of those contracts. An account would then be taken of the work Peterson did under them, and of such damages and advances, and *Butler* would be allowed whatever sum Peterson ought, in justice and equity, to pay him. The result would be the same were Peterson's action in form on the three contracts. The plaintiff occupies the same position in this action.

It is obvious, therefore, that it was important to ascertain what were the terms of the parol contract. Because the testimony on the subject was so radically in conflict, the question should have been submitted to the jury. The learned circuit judge either disregarded that contract entirely, or held that it was part and parcel of the contract of 1883. In either view it was error.

The chattel mortgage was attacked for alleged fraud in its inception. This a creditor may do in a garnishee action against the mortgagee, although the mortgagor could not impeach it because executed in fraud of his creditors. In such a case the relief which the creditor may have is not limited to that to which the debtor is entitled, as it is when he only seeks to recover a demand of his debtor against the garnishee, untainted with fraud. Hence the testimony offered to show the alleged fraudulent character of the mortgage should have been received, provided the plaintiff proved himself a creditor of Peterson when the mortgage was executed. As there must be another trial in any event, we do not determine whether the plaintiff made such proof.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.