### Swift *v.* Meyers *et al.*

(*Circuit Court, D. Oregon.* December 24, 1888.)

1. Mortgages—Suit to Enforce Lien—Summons—Notice.
   A suit to enforce the lien of a mortgage is not one to recover money or damages only, and therefore the notice inserted in the summons must be according to the direction in subdivision 2, § 53, Comp. 1887.

2. Same—Judgment—Of State Court—Collateral Attack in Federal Court.
   The judgment of a state court may be collaterally questioned or attacked in a national court sitting in the same state, for a want of jurisdiction over the subject-matter or of notice to the defendant, the same as if it was a judgment of a court of another state.

3. Same—Service of Process—Constructive Service—Presumption.
   A suit to enforce the lien of a mortgage by the sale of the property is in the nature of a proceeding *in rem*, and in case the mortgagor or his successor in interest is a non-resident, or not found, so that he cannot be personally served with process, in the state, the court may decree a sale of the property on such substituted or constructive service of process on the mortgagor as the legislature may provide: but in such case there is no presumption in favor of the jurisdiction of the court, and, unless the record shows a compliance in all essential particulars with the statute authorizing such service, its decree is null and void.

4. Same.
   A statute of Oregon (Comp. 1887, § 55) provides that if a defendant in a suit cannot be found, service of the summons may be made by delivering a copy of the same "to some person of the family, * * * at the dwelling-house or usual place of abode of the defendant." In a suit to enforce the lien of a mortgage on property in Linn county, the return of the sheriff showed that the defendant could not be found, and that a copy of the summons was delivered to a "member" of the family, "at his usual place of abode in said [Linn]

county," on which service the court gave a decree by default for the sale of the property under which the defendants claim. *Held*, that the service was invalid, and the decree of sale thereon null and void, because the return did not show that the substituted service of the summons was made at the defendant's usual place of abode in the state, in whatever county it might be, but only at his usual place of abode in Linn county.

5. SAME—RECORD—COLLATERAL ATTACK.
   *Semble*, that the record of a court cannot be collaterally impeached or contradicted except by a suit in equity, brought for the purpose of setting aside a judgment, on the ground that in fact the court never acquired jurisdiction to give the same.

(*Syllabus by the Court.*)


At Law.   Action to recover possession of real property.
*W. Scott Beebe*, for plaintiff.
*Albert H. Tanner* and *Charles E. Wolverton*, for defendants.


DEADY, J.   This action is brought by the plaintiff, a citizen of California, against the defendants, citizens of Oregon, to recover 377.77 acres of land situate in Linn county, Or., exceeding in value $6,000.

The case was tried by the court, without the intervention of a jury, upon the amended complaint, answer, and reply thereto, and a stipulation as to the facts.

From these it appears that on and prior to October 16, 1879, Philip Grigsby was the owner of the premises in question, subject to a mortgage thereon, given to the state commissioners for the management of the school fund, to secure the payment of $4,500, with interest, theretofore borrowed by Grigsby from said commissioners; that on said date a suit theretofore brought by said commissioners against Grigsby to enforce the lien of said mortgage was pending in the state circuit court for said county, in which a summons had been issued, directed to said Grigsby, requiring him "to appear and answer the complaint" therein within the time specified, and notifying him that if he failed so to appear and answer "the plaintiff will apply to the court for the relief demanded" in the complaint; that said summons was returned by the sheriff of said county with the following certificate or proof of service annexed thereto: "I hereby certify that I have served the annexed summons in Linn county, Oregon, on the 16th day of October, 1879, on the therein named defendant, Philip Grigsby, he not being found, by leaving a copy thereof,   *   *   *   together with a copy of the complaint,   *   *   *   with Mary Backus, a member of the family, over the age of 14 years, at his usual place of abode in said county;" that thereafter said circuit court gave a decree in said case by default in favor of the plaintiffs therein, on which the interest of Grigsby in the premises was sold on execution, and the proceeds applied on the demand of the plaintiffs, and in discharge of said lien; that said sale was duly confirmed, and a conveyance of the premises made in pursuance thereof to the purchaser, J. W. Meyers, under whom the defendants claim; and that the plaintiff, on April 26, 1888, received a conveyance from Grigsby of all his interest in the premises.

The stipulation concludes that, if the "summons" is valid, and the "return" is sufficient to show due service of the same on Grigsby, the defendants are entitled to judgment in the action, but, if not, the plaintiff is entitled to judgment.

It is contended by the plaintiff that the decree of the circuit court of Linn county, under which the defendants claim, is void and of no effect, because the court had no jurisdiction in the premises.

The grounds of this contention are: (1) The summons was invalid, because it did not contain a notice that the plaintiff would, if the defendant failed to answer the complaint, take judgment for a sum specified therein, but only that in such case they would apply to the court for the relief demanded in the complaint; and (2) the return of the sheriff does not show a valid service of the summons, because (*a*) it appears therefrom that it was "left" with Mary Backus, and not "delivered" to her; (*b*) it does not appear whether Mary Backus was a member of her own family or of the defendant's; and (*c*) it does not appear that the summons was served at the "usual place of abode" of the defendant in the state, but only "in Linn county."

The statute (Comp. 1887, § 53) provides "that there shall be inserted in the summons, a notice in substance as follows: (1) In any action for the recovery of money or damages only, that the plaintiff will take judgment for a sum specified therein, if the defendant fail to answer the complaint; (2) in other actions, that if the defendant fail to answer the complaint, the plaintiff will apply to the court for the relief demanded therein."

By section 55 (Comp. 1887) it is further provided that "the summons shall be served by delivering a copy thereof, together with a copy of the complaint,  *  *  *  as follows:" (Here follow five subdivisions, the first four of which relate to the service on corporations and persons under guardianship.) The fifth one provides: "In all other cases to the defendant personally, or, if he be not found, to some person of the family, above the age of 14 years, at the dwelling-house or usual place of abode of the defendant."

These provisions concerning a summons and its service in an action at law, are equally applicable to a summons and its service in a suit in equity, to enforce the lien of a mortgage. Comp. 1887, § 389.

The suit against Grigsby was not, in my judgment, a suit to recover money only; primarily it was brought to ascertain and enforce a lien on the real property in question, and obtain a judicial sale of the same, and the application of the proceeds thereof in payment of the debt the mortgage was given to secure. Comp. 1887, § 414.

It is true that in case a mortgagor has given a personal obligation for the debt, the law authorizes the court to "decree a recovery of the amount of such debt against" him, as well as to decree a sale of the property to satisfy the same. But the decree *in personam* for the recovery of the money is not the "only," nor even the principal, object of the suit. At least it is merely a conditional decree, and cannot be enforced until the property adjudged to be sold is disposed of; and then only in case the pro-

ceeds of such sale are not sufficient to satisfy the decree. Comp. 1887, § 417.

The notice in the summons was properly given under the second subdivision of section 53; and a copy of the complaint having been served at the same time, the defendant was fully informed of the nature of the decree that might be taken against him in case he failed to answer.

The last objection to the validity of the service will be considered first.

It does not appear that a copy of the summons was delivered "to some person of the family   *   *   *   at the dwelling-house or usual place of abode" of the defendant. What does appear is this: A copy of the summons was "left" with "a member of the family over the age of 14 years, at his [the defendant's] usual place of abode in said [Linn] county."

A suit to enforce the lien of a mortgage is a local one, and can only be brought in the county where the land lies. Comp. 1887, § 387. But the defendant may be served with the summons in any county of the state in which he may be found. Id. §§ 52, 54.

There is no presumption that Grigsby was a resident of Linn county because the suit to enforce a lien on real property belonging to him therein was brought there. It could not have been brought elsewhere. For aught that appears he may have resided in any other county in the state. And if "found" anywhere therein, whether commorant or itinerant, he could have been served by delivering to him personally, a copy of the summons. But if not so "found," then he could only be served by the delivery of a copy of the summons "to a person of the family"—the family of which he constituted a part, whether as head or member—at his dwelling-house or usual place of abode."

It is self-evident that a defendant can have but one unqualified "usual place of abode" in the state at the same time. If he has other places of abode therein, as he may have, they are his unusual places of abode. A defendant may be served personally anywhere in the state that he may be "found," but, if served constructively, by the mere delivery of a copy of the summons for him to the person designated by the statute, it must be done at his "usual place of abode" in the state, in whatever county that may be. And if he has no such place of abode, and cannot be found, he must be served by publication. His usual place of abode in a particular county is not necessarily his usual place of abode in the state. A person may reside eleven months in the year in Multnomah county, and one month in the year near the beach in Clatsop county. He may have a fixed and well-known residence in each county. But can there be any question in which county his usual place of abode is, within the meaning of the statute regulating the service of a summons? Certainly not. It is in Multnomah county. Now, suppose a suit was commenced against this person in Clatsop county, to divest him of some interest in real property therein; the sheriff might leave a copy of the summons at his residence in Clatsop county with his housekeeper, or with "some person of the family" with whom he always resides when in the county, and then truly return that, the defendant not being found, he had served the summons by leaving a copy thereof with such person "at his usual

place of abode in Clatsop county;" and do this, notwithstanding he and the plaintiff might both well know that the defendant had not been in the county for nearly 11 months, and was then, and had been for years, a permanent resident of Multnomah county, in which was his usual place of abode in the state.

In *Brown* v. *Langlois*, 70 Mo. 226, it was held under a similar statute that service of a summons by leaving a copy "at the usual place of abode" of the defendant, "when in the city of Cape Girardeau," was invalid; and that a judgment by default thereon was a nullity.

In *Allen* v. *Manufacturing Co.*, 72 Mo. 326, service of process by leaving the same "at the Hardin House, the usual place of abode of the" defendant, "prior to the time he left the state," was held bad, because it did not show that the writ was left at a place which was the abode of the defendant at the time of service.

In *Bank* v. *Suman*, 79 Mo. 527, a service by leaving process at the "last usual place of abode" of the defendant was held invalid, because, *non constat*, that his "last" place of abode was his present one, and the return could have been true, and the defendant "reside in another county or jurisdiction."

In *Dawson* v. *Bank*, 3 Ark. 505, and *Parks* v. *Weems*, 9 Ark. 439, it was held that service of a summons at the residence of the defendant by delivering a copy to a person present there, whom it did not appear from the return was "a member of the family," is bad, and will not support a judgment by default.

In *Sanborn* v. *Stickney*, 69 Me. 343, it was held that a return on a writ that it was served on the defendant by leaving a copy of the summons for him "at his last and usual place of abode in Kennebec county" did not show that the summons was left at the defendant's "place of last and usual abode," as by statute required. Upon this service there was a judgment by default, and afterwards on this judgment there was an action brought in the same state, and the invalidity of the service was relied on as a defense. The court said:

"The point taken in the defense is that 'his last and usual place of abode in Kennebec county' would not be his 'place of last and usual abode' in the state. We concur in that interpretation of the officer's return. * * * All the officer certified may be true and no service be made. The officer would not be liable for making a false return. But he made an indefinite, equivocal, and insufficient return. It must be certain that a defendant has been legally notified before judgment can properly go against him."

In *Ames* v. *Winsor*, 19 Pick. 247, the return was to the effect that the summons had been left for the defendant "at his last and usual place of abode" known to the officer serving it, in the city of Boston. The statute required the summons to be delivered to the party, or left at his "dwelling-house or place of last and usual abode." It was held that the service was insufficient.

In *Settlemier* v. *Sullivan*, 97 U. S. 444, it was held that the service of a summons under a similar statute (Or. St. 1855, p. 86, § 29) by delivering a copy thereof to the wife of the defendant at the usual place of

abode, when the return did not show that the defendant could not be found, was invalid, and the judgment by default taken thereon null and void.

In delivering the opinion of the court, Mr. Justice FIELD said: "The inability of the officer to find the defendant was not a fact to be inferred, but a fact to be affirmatively stated in his return." To the same effect is the ruling in *Trullenger* v. *Todd*, 5 Or. 39.

In *Earle* v. *McVeigh*, 91 U. U. 503, it was held that where during the absence of a person and his family a statute authorized the notice of a suit against him to be posted upon the front door of his "usual place of abode," that a notice so posted seven months after the house had been vacated by the defendant and his family, was not posted on his "usual place of abode," and a judgment founded thereon was absolutely void. The court says:

"By the expression 'the usual place of abode' the law does not mean the last place of abode; for a party may change his place of abode every month in the year. Instead of that, it is only on the door of his then present residence where the notice may be posted, and constitute a compliance with the legal requirement."

In these cases, the question of the validity of the service sometimes arose on a direct proceeding, and in others collaterally, but in all alike it was held that, the same being insufficient, the court acquired no jurisdiction thereby, and its judgment thereon was null and void.

In none of them, however, but *Earle* v. *McVeigh*, was the record concerning the service contradicted by extraneous evidence; and in that case the proceeding was a suit in equity to set aside the judgment. In all the rest, it was determined on the face of the record, that the service was invalid. In my judgment, where it is sought to contradict the record concerning any jurisdictional matter, it should only be done by a suit in equity, on proper allegation and proof, in which the court, in granting the relief prayed for, may make such conditions in favor of an innocent purchaser, who invested his money on the faith of a record showing jurisdiction in the court, as may be possible and proper.

But a purchaser at a sale on execution issued on judgment or decree taken by default, where the record does not show jurisdiction in the court over the subject, and notice to the defendant, has no equity in the premises as against the true owner. He is the victim of his own folly or negligence.

After a court has acquired jurisdiction by a proper service of process on the defendant, any error in its proceeding cannot be questioned collaterally; but until jurisdiction is acquired, its judgment may be questioned and held for naught in a collateral as well as a direct proceeding.

The only authority cited in favor of the sufficiency of the service in question is *Healey* v. *Butler*, 66 Wis. 9, 27 N. W. Rep. 822, in which a similar service of a summons was held good. The return stated that the summons was served on the defendant in Clark county at his last and usual place of abode therein. The court said the words "last and" were superfluous, and then arbitrarily construed the return, as if it

read: "Served the summons at the defendant's 'usual place of abode,' which place of abode was then in Clark county."

Admitting the insufficiency of the return, counsel for the defendants insist that the judgment of the circuit court of Linn county thereon is valid in the courts of this state, and cannot be questioned therein collaterally; and that the judgment of a court of this state, when called in question or attacked in the circuit court of the United States for this district, must be regarded as a domestic one.

I cannot assent to either of these propositions. As was said by Mr. Justice FIELD in *Galpin* v. *Page*, 3 Sawy. 107:

"Whilst the courts of the United States are not foreign courts in their relation to the state courts, they are courts of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give to the judgments of the state courts only the same faith and credit which the courts of another state are bound to give them."

And what faith and credit must be given to the judgment of a state court in the courts of another state may be seen in *Christmas* v. *Russell*, 5 Wall. 305, where it is said such a judgment is neither foreign nor domestic, in every sense, in said courts, but it is "open to inquiry as to the jurisdiction of the court and notice to the defendant;" citing *D'Arcy* v. *Ketchum*, 11 How. 165; *Webster* v. *Reid*, Id. 437.

*Elliott* v. *Peirsol*, 1 Pet. 328, was ejectment brought in the circuit court of the United States for Kentucky. The title of the defendants depended on the validity of an order of a county court of that state, concerning the privy examination of a *feme covert*, who was a party to a deed on which the defendants relied. The court instructed the jury that the order of the county court was void for want of jurisdiction over the subject. On error to the supreme court the ruling was affirmed. The court, TRIMBLE, J., said:

"Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and, whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void. * * * The jurisdiction of any court exercising authority over a subject may be inquired into in every court when the proceedings of the former are relied on and brought before the latter by the party claiming the benefit of such proceedings."

In *Thompson* v. *Whitman*, 18 Wall. 467, the supreme court, in referring to the opinion of the court in *Christmas* v. *Russell*, *supra*, in which it is said that the judgment of a state court is "open to inquiry as to the jurisdiction of the court and notice to the defendant," said: "In a number of cases, in which was questioned the jurisdiction of a court, whether of the same or another state, over the general subject-matter in which the particular case adjudicated was embraced, this court has maintained the same general language;" citing particularly *Elliott* v. *Peirsol*, *supra*.

*Galpin* v. *Page*, 18 Wall. 350, was a case in which the jurisdiction of a state court was questioned in an action in a national court, sitting in the same state. 3 Sawy. 93. The court held that the presumption

which the law implies in support of the judgment of a court of general jurisdiction, is confined to facts concerning which the record is silent, and limited to the case of persons within their territorial jurisdiction in a proceeding according to the course of the common law.

In *Pennoyer* v. *Neff*, 95 U. S. 732, Mr Justice FIELD, speaking of judgments *in personam* in state courts where the defendants had not been personally served with process, or voluntarily appeared, said:

"The courts of the United States are not required to give effect to judgments of this character when any right is claimed under them. Whilst they are not foreign tribunals in their relations to the state courts, they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give to the judgments of the state courts only the same faith and credit which the courts of another state are bound to give to them."

This seems to be decisive of the question.

In none of these cases, nor any other to which my attention has been attracted, is it said or even suggested that the judgment of a state court cannot be questioned or attacked collaterally, either for want of jurisdiction of the subject-matter or notice of the proceeding to the defendant in a national court sitting in the same state.

The case of *Owens* v. *Gotzian*, 4 Dill. 436, is an apparent, and may be a partial, exception to this statement.

In an action in the United States circuit court for the district of Minnesota, a judgment of a court of the state was given in evidence to defeat the same. The plaintiff then offered to prove that the summons in that case was served by a silent partner of the plaintiffs therein, contrary to the statute, which forbid "a party to the action" to make such service, claiming that this fact made the service invalid, and the judgment thereon void.

The court (NELSON, J.) assumed on the authority of *Thomson* v. *Lee*, 22 Iowa, 206, that the judgment of the state court should be regarded as a domestic judgment in that tribunal, but admits that even then "it may be shown void on its face if the court rendering it had no jurisdiction of the defendant's person;" and added: "It is equally true that except for errors affecting the jurisdiction of the court its validity cannot be questioned."

But this is all that is sought to be done in this case, or that is claimed can be done, even if the decree of the state court is not considered a domestic one.

The court also held that the alleged defect in the service of the summons was at most only an irregularity, which did not affect the jurisdiction of the court; and. finally, that as the alleged silent partner was not named in the proceedings, he was not "a party to the action" within the meaning of the statute, and therefore the service was not only sufficient, but regular.

Assuming, however, that the service, as shown by the record in this case, is invalid, as in my judgment it is, the validity of this decree, according to the ruling in *Odell* v. *Campbell*, 9 Or. 298, may be questioned, even in the state courts.

The opinion in this case, by Mr. Chief Justice LORD, is a clear and able exposition of the law on the subject of acquiring jurisdiction by substituted or constructive service of process. The case was an action to recover real property, and the defendant claimed title under a sale on an execution issued on a judgment against the plaintiff's grantor prior to the conveyance to the latter. The property was attached, and an attempt was made to serve a summons on the defendant as a non-resident by publication. The order of publication omitted to direct that a copy of the summons and complaint be mailed to the defendant at his place of residence, nor did it state any reason for such omission, as that such residence was unknown to the plaintiff, and could not with reasonable diligence be ascertained by him. . The service was held invalid, and the judgment void, for the reason that the court never acquired jurisdiction of the person of the defendant; and that in such a proceeding there is no presumption in favor of the jurisdiction, but the record must show a compliance with the statute in every essential particular. And this rule has been applied by the courts of the state to a judgment of a national court sitting in this state.

In *Victor* v. *Davis*, 11 Or. 447, 5 Pac. Rep. 750, a decree of this court was questioned collaterally, and held for naught, on the alleged ground that the proceeding to acquire jurisdiction of an absent defendant was invalid, on the authority of *Odell* v. *Campbell*, 9 Or. 298.

The suit in which the decree in question was given, may be considered as *in personam* and *in rem*. So far as it was sought to enforce the lien of the mortgage on the property included therein, it was in the nature of a suit *in rem*, (*Pennoyer* v. *Neff, supra*, 733;) but so far as it was sought to obtain a money judgment against Grigsby it was *in personam*. As to the proceeding *in rem*, it was in the power of the state to provide a substituted service of the summons, in case the defendant could not be found, by delivering it to some person of the family, at his usual place of abode or otherwise; but as to the judgment *in personam*, nothing short of personal service or a voluntary appearance could authorize that.

In proceeding to enforce the lien of the mortgage by the sale of the property on a substituted service of the summons, the court was not proceeding according to the course of the common law, and there is no presumption in favor of its jurisdiction, or the regularity of the proceedings on which it depends. *Odell* v. *Campbell*, 9 Or. 298.

In conclusion, it does not appear from the record that Linn county was Grigsby's "usual place of abode" in the state at the date of the service of the summons on Mary Backus for him, and there is no presumption that it was, and therefore it does not appear that the service or notice required by the statute was had or given, or that the circuit court of Linn county ever acquired jurisdiction to order a sale of the property.

It is not necessary to consider the other objections to the service, nor whether the plaintiff could in this action contradict the return of the sheriff, so as to show that Grigsby, at the date of the service on Mary Backus, had no place of abode in Linn county, or even in the state. The question was argued and submitted upon the understanding that if the

court found the return sufficient, the plaintiff would then, if allowed, offer evidence to contradict it, as suggested. As I have said, my opinion is that the return cannot be contradicted, except in a suit in equity, brought for the purpose of setting aside the judgment thereon.

There must be a finding of fact and law for the plaintiff.