OSWALD and another *v.* KAMPMANN.

(*Circuit Court, W. D. Texas.* June 28, 1886.)

1. ACTION—HOW COMMENCED—ABSENT PARTIES—SEIZURE.
    When the personal property of an absconding party or debtor is seized, there must be a seizure *in rem;* but when the property in question is real estate, an actual seizure is not necessary if a lien is sought to be foreclosed that is sufficient to give jurisdiction to the court.

2. JUDGMENT—HOW ATTACKED COLLATERALLY.
    Where a judgment is collaterally attacked, in order to succeed, the plaintiff must show, not merely that it was voidable, but that it was absolutely void.

3. WRIT AND PROCESS—NON-RESIDENT PARTIES—PERSONAL SERVICE—FORECLOSURE.
    Proceedings to foreclose a lien are proceedings *in rem,* and personal service on absent parties is not essential to give the court jurisdiction.

4. SAME—SUMMONS BY PUBLICATION—REQUISITES—IRREGULARITIES.
    While the citation commanding the publication of a notice of action should state that the paper or sheet in which the publication is to be made is a newspaper, an omission so to do is a mere irregularity, and cannot be relied on as vitiating a judgment which is collaterally attacked.

5. SAME—SUMMONS—PUBLICATION—OFFICER'S RETURN—IRREGULARITIES.
    The officer's return that a given notice has been published for four successive weeks should state the separate days on which such notice was published, but a failure so to do is only an irregularity, which cannot be relied on in a collateral attack upon a judgment.

Trespass, to Try Title.
*Carleton & Morris,* for plaintiffs.
*Waelder & Upson,* for defendant.

TURNER, J. One of the plaintiffs is the widow of W. Oswald, and the other a child of Mrs. Oswald. In 1852 one Conrad contracted for the lands in question with the city of San Antonio. Conrad was

to pay $87 therefor; 20 per cent. cash, the balance to be paid at the expiration of 50 years, but the interest on the deferred payment was to be paid semi-annually, and, in case of default in the payment of the interest as it accrued, then the deferred payment of the principal, and all of the accrued interest, was to become due. The contract and deed, as it is called, is in one paper, and there are apt words to make a good conveyance in fee to the purchaser; and still, the whole instrument construed together, the same would better be described as a contract and deed.

Conrad sold to W. Oswald, deceased, Oswald assuming the payment of the unpaid balance of the purchase money, and was, as between them, subrogated to all the rights, duties, and obligations of Conrad. After the death of W. Oswald, the deferred payments not having been made, the city of San Antonio instituted suit in the district court of Bexar county, the object of which was to obtain a judgment for the unpaid balance of interest, and to foreclose the lien retained in the deed and contract. In that suit J. B. Conrad and W. Oswald were made defendants. After the death of W. Oswald, and before September, 1870, Mrs. Oswald and her daughter went to Germany, (they were Germans,) and have not returned. The suit was instituted, as stated, in the district court of Bexar county, and service was made by publication. Judgment was rendered in the case, and a judgment foreclosing the vendor's lien was entered, the land sold upon an execution, and order of sale issued upon the judgment, (no actual seizure of the property was made, so as to bring the property into the custody of the law.) One J. H. Kampmann became the purchaser. Kampmann was stranger to the judgment, and defendant claims under the Kampmann title. The sale to Kampmann was on the fourth day of November, A. D. 1873, 12 years before the institution of this suit. The property in the mean time has become of great value.

The plaintiff Mrs. Oswald was bound to know that the purchase money for the land was not paid, as her deed recites and provides for suit, and now, after this lapse of time, she comes into court, and asks that she may have these lands back. The incumbrance upon the land has been discharged by the purchase. She suffered the purchaser to rest securely for 12 years, and now demands that the lands shall be decreed to her because the proceedings in the fore-closure suit were not in *strict* conformity to the laws of the state, which provided for service by publication. I am aware of the rule that when proceedings are instituted not in accordance with the common law, viz., by actual service, that the provisions of the statute are to be strictly construed; and, further, of the proposition that no state can give extraterritorial effect to its laws, this doctrine is too well settled to require authorities, and will only cite *Pennoyer* v. *Neff*, 95 U. S. 714. And it may be questioned whether, had the suit been for an ordinary debt, evidenced by a note or account, the judgment would not be void for want of service. Back of this rule,

and based upon it, is the idea that every person has a right to his day in court; that is, shall be entitled to notice that action is being had that may affect his rights and property. This is a well-settled doctrine, but, like most other general rules, may have its exceptions.

In this case the plaintiff left the state knowing that this property was liable to be sold to pay this debt, and knowing, also, that the title under which she claimed made provisions on its face for the institution of suit to foreclose the lien; and if she saw fit to abandon the country, and pay no attention to the property, she ought not to be heard to complain if the law makes an exception to the general rule in her case. In order to succeed, the plaintiff must show that the judgment was not voidable merely, but that it is and was absolutely void for want of jurisdiction over the person and of the property in question. The proceeding was instituted to foreclose the lien, but no actual seizure was made. The question, then, recurs, must there, of necessity, be an actual seizure of the property, as in cases when the proceedings are strictly *in rem*, in order to confer jurisdiction over the property within the territorial limits of the state, in case of an absconding party or debtor?

In the case of *Pennoyer* v. *Neff* it is stated that substituted service by publication may be sufficient in "cases where the object of the action is to reach and dispose of property in the state, or some interest therein, by enforcing a contract or a lien respecting the same," etc. If this be the law, then the proceedings were not void, but voidable, at most. The suit was to enforce the contract of purchase not only, but to foreclose the specified vendor's lien as contained in the contract of purchase, in which contract of purchase it is insisted that the legal title passed to plaintiffs' vendor.

In reply to the authority as contained in *Pennoyer* v. *Neff*, it is said that the words referred to in the decision are but *dictum*. That may be true, as applied to that case, but, if the rule is based upon justice and right, we may reasonably expect that the doctrine will be applied whenever a case shall be presented requiring its application; and, really, it seems to me that there never would be a more opportune time to apply the rule than in the present case. In the case cited from 18 Wall. it will be seen that the purchase was made by the attorney of plaintiff in that suit, and therefore the purchaser had actual notice; and stress was put upon that fact in declaring the title of the purchaser bad for non-compliance with the strict letter of the law in regard to substituted service; or, in other words, substituted service upon a non-resident by publication, in a mere personal action, gave no jurisdiction over the person, and the court, therefore, had no power to appoint a guardian of the minor whose rights were sought to be affected.

Taking the view of the case as above suggested, in *Pennoyer* v. *Neff*, the district court being a court of general jurisdiction, and, for the purpose of foreclosing the lien, having jurisdiction of the *res*, it follows

that the judgment was not absolutely void, and, whether voidable, it is not necessary to inquire.

The cases cited by plaintiff's counsel in 10 and 18 Wall. go far towards establishing the doctrine claimed by the plaintiff, viz.: that, in personal actions, substituted service upon non-residents will not confer jurisdiction over the person, and that, in proceedings *in rem*, there should be an actual seizure of property in some way authorized by law, in order to confer jurisdiction of the *res*. The peculiar facts in this case justify the most liberal construction consistent with law, and as the supreme court has said in *Pennoyer* v. *Neff*, 95 U. S. 714, that proceedings to foreclose a lien are in their nature proceedings *in rem*, I am disposed to regard the announcement as made upon due consideration, coming as it does from the highest court in the land, although not necessary to a decision of the case, and seemingly not in accord with previously announced doctrine. It will be noticed, however, that in the case of *Cooper* v. *Reynolds*, 10 Wall. 317, the language is: "So, also, while the *general* rule, in regard to jurisdiction *in rem*, requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court." And then states that "among this latter class is the levy of a writ of attachment, or seizure of real estate, which, being incapable of removal, and lying within the territorial jurisdiction of the court, is, for all practical purposes, brought under the jurisdiction of the court by the officer's levy of the writ, and return of that fact to the court. So the writ of garnishment or attachment, *or other* form of service, on a party holding a fund which becomes the *subject of litigation*, brings that fund under the jurisdiction of the court, though the money may remain in the actual custody of one not an officer of the court."

These are some of the exceptions to the *general rule*, and I am constrained to regard the declaration in 95 U. S. as giving another example of departure from the *general rule*. If this is a correct view, then, as this is a collateral attack, the matters relied upon to defeat defendant's title are but irregularities, and do not render the judgment void. The view here taken is supported by the whole tenor of the opinion of Justice FIELD in *Pennoyer* v. *Neff*, 95 U. S. 714, and is fully sustained by Justice MOORE in the well-considered case of *Battle* v. *Carter*, 44 Tex. 485.

I will, however, proceed to consider the objections raised to the validity of the judgment assailed in this cause, and by this collateral attack.

The objections raised to the validity of the judgment are as follows: The defendants were not residents, and suit was instituted by substituted service; and—

*First.* The citation for publication commanded the publication in the San Antonio Express. It is insisted that it should have com-

manded publication in some newspaper published, and that it does not affirmatively appear that the San Antonio Express was a newspaper, or what it was. At the date of this citation the law upon the subject of legal notices was that the governor of the state should designate in what papers legal notices of that character should be published. The district court being a court of general jurisdiction, regularity will be presumed unless the contrary appears; and this rule would seem to require that the presumption be indulged that the governor had discharged that duty, and had designated the San Antonio Express as the paper, and that the officer had followed the designation. See Laws 1870; Act August 13, § 13.

The *second* objection is that the officer's return as to the mode of service is not sufficient, in that it states as a fact that publication was made for four successive weeks, etc., when it is contended that the return should have stated the days upon which the publications were made, so that the court could determine whether the notice had in fact been published for four successive full weeks. Under the rulings of the supreme court of this state, I think probably, if there had been an appeal or writ of error to reverse, the proposition would have been sustained; but I have found no case that goes to the extent of holding that such judgment was void when collaterally attacked, as in this case. The record does not affirmatively show a want of publication for four successive weeks. Therefore, in a collateral attack, the presumption is that the publication was, as stated in the return, for four successive weeks before the return-day. *Lawler* v. *White,* 27 Tex. 253. It will be noticed that each case referred to in the Texas Reports is where the judgment was directly attacked, or when the record affirmatively showed the insufficiency of the service and return.

Judgment for the defendant.