## DE WITT v. CHICAGO, B. & Q. RY. CO. et al.

*(Circuit Court, D. Massachusetts. January 29, 1890.)*

RAILROAD COMPANIES—BONDS AND MORTGAGES—OFFER OF EXCHANGE—LACHES.

Where a corporation executes a mortgage providing that the holders of a certain 'issue of bonds may exchange them for a new issue, "at any time after the execution and delivering thereof," a court of equity will not enforce an exchange after 14 years, in favor of purchasers of said bonds, not parties to the mortgage.

In Equity. Bill filed by John E. De Witt against the Chicago, Burlington & Quincy Railroad Company *et al.*, to enforce an exchange of bonds.

*Hutchins & Wheeler*, for complainant.

*Richard Olney* and *E. C. Perkins*, for defendants.

COLT, J. In 1872 the defendant corporation issued bonds to the amount of $7,026,000, payable on January 1, 1896, with interest at the rate of 7 per cent. per annum. The bonds were not secured by mortgage on the property of the railroad. On July 1, 1873, the defendant corporation executed a mortgage to the defendant trustees, whereby all its property was conveyed to the said trustees upon the trusts therein set forth. The mortgage, among other provisions, contained the following clause:

"It is expressly understood and agreed that of said bonds the amount of twenty millions of dollars thereof shall be set aside and held by the parties of the first part, and they and the proceeds thereof shall be used and appropriated exclusively and only for the funding, paying off, and discharging the bonded and other indebtedness of the said first party, its said contingent liabilities hereinbefore mentioned, and to keep good said sinking fund; and that of said twenty million of such bonds so many thereof as may be required for that purpose may be exchanged at par for said seven (7) per cent. bonds of said first party, dated January first, (1st,) A. D. eighteen hundred and seventy-two, (1872,) and payable January first, (1st,) A. D. eighteen hundred and ninety-six, (1896,) heretofore issued and now outstanding; and the holders thereof shall have the right to make such exchange at the office of said first party in the city of Boston, at any time after the execution and delivery thereof; all of which said outstanding seven per cent. bonds, when so exchanged and taken up by said first party, shall be canceled by said first party, who shall cause to be written on the face of the same the date of such exchange."

In the present bill the plaintiff, who is the owner of nine $1,000 bonds of the issue of 1872, asks that the defendant corporation be ordered to deliver to him nine of its bonds dated July 1, 1873, in exchange for his 1872 bonds, claiming that under the above provision in the mortgage it made a contract so to do. It appears that the railroad company, after making the mortgage of July 1, 1873, issued two printed circulars to the effect that the holders of the unsecured bonds had the opportunity to exchange them for the consolidated mortgage bonds. The last of the circulars was dated June 23, 1879. In January, 1881, the finance committee of the company decided to make no further exchange, and all

offers and proposals for exchange on the part of the holders of the 1872 bonds have been refused since that date. In August, 1887, the plaintiff requested the company to exchange his bonds for the 1873 issue, and was refused. Between 1881 and 1886 the price of the 1872 bonds declined from 128 to less than 120, and the price of 1873 bonds rose from 130 to 135. The plaintiff in August, 1886, knowing the terms of the mortgage, and having heard that the defendant corporation had in certain instances refused to make further exchanges, bought from other parties nine of the 1872 bonds. Of the $30,000,000 of bonds which the corporation might issue under the mortgage of July 1, 1872, only $13,998,000 has in fact been executed, the last in 1879, and of these $8,566,000 has been applied for the purposes of exchange. The railroad now holds in its possession 12 of these bonds executed in 1879.

Whatever right of exchange a holder of 1872 bonds might have had under the mortgage of 1873, to which he was not a party, it seems to me that such a privilege did not exist permanently, but only for a reasonable time. The railroad company invited exchanges to be made from 1873 up to 1881, a period of nine years, and issued circulars to the holders of the 1872 bonds, stating their willingness to make such exchanges, but it surely was not contemplated that this should go on indefinitely. The plaintiff, 13 years after the making of the mortgage, and more than 5 years after the company stopped making exchanges, at a time when the 1872 bonds were selling at a lower price than the mortgage bonds, knowing that the company had refused to make further exchanges, purchases the bonds in controversy, and one year later tenders them to the company for exchange. I do not deem it necessary to go into the question of the legal right of the 1872 bondholders to enforce an exchange of their bonds, but, admitting such a right, I am of opinion that this plaintiff is barred in a court of equity from enforcing it, by reason of the lapse of time. The language of the indenture of 1873, that an exchange of bonds may be made "at any time after the execution and delivering thereof," marks the time when the exchange was to begin, and it does not mean that the process might continue with no limitation as to time. The circumstances under which an offer of exchange was made in 1873 might greatly change in 1887. What the company might deem advantageous at that time may prove to be otherwise 14 years later. The rule laid down by Parsons on Contracts (volume 1, p. 482) seems to me applicable to this case:

"It may be said that, whether the offer be made for a time certain or not, the intention or understanding of the parties is to govern. * * * If no definite time is stated, then the inquiry as to a reasonable time resolves itself into an inquiry as to what time it is rational to suppose that the parties contemplated; and the law will decide this to be that time which as rational men they ought to have understood each other to have had in mind."

See, also, *Loring* v. *City of Boston*, 7 Metc. 409; *Hill* v. *Hill*, 113 Mass. 103; *Minnesota Linseed Oil Co.* v. *Collier White Lead Co.*, 4 Dill. 431; *Hotel Co.* v. *Montefiore*, L. R. 1 Exch. 109; *Baily's Case*, L. R. 5 Eq. 428.

The holders of the 1872 bonds were not parties to the indenture of 1873. If they desired to take advantage of the offer of exchange which was voluntarily given to them by that instrument, they should have applied therefor within a reasonable time. An application not made until fourteen years after, comes too late. Bill dismissed.