BATT *v.* PROCTER *et al.*

(*Circuit Court, W. D. Texas, San Antonio Division.* March 20, 1891.)

SERVICE OF PROCESS—NON-RESIDENCE—PUBLICATION.

Statutes authorizing extraterritorial service of process ought to be strictly construed, and under Act Cong. March 3, 1875, (18 St. 470, § 8,) providing that in certain cases the court may order a summons to be served personally upon non-resident defendants, and, when personal service is not practicable, to be served by publication, an application for an order of publication, which alleges that the number of defendants is large, that the exact residence of many of them is unknown, and cannot with reasonable diligence be learned, and the great cost of obtaining personal service upon those whose residences are known, but which fails to show that such service is impracticable, or to distinctly state the known places of residence, or show the diligence used to ascertain the places of residence when unknown, must be denied.

In Equity. Application for order of publication.
*S. M. Ellis* and *James Raley*, for plaintiff.

MAXEY, J. The plaintiff makes application, upon oath of his solicitor, to the court in session at Austin for an order of service by publication as to all defendants in the suit who are averred in the application to be non-residents of this state. The amended bill of complaint, as against several of the defendants, prays for an accounting and a reconveyance of certain lands therein specified. A number of the defendants are alleged in the amended bill to be residents of the state of Texas. According to the allegations of the amended bill, the defendants Martha A. Adams, Martha J. Adams, Dora B. Adams, reside in Cayuga county, N. Y.; Ex. Stockdale, Logan county, Ky.; Nancy B. Stockdale in Virginia; Ex. Norton, city, county, and state of New York; W. L. Clark, Frederick county, Va.; Cynthia T. B. Holman, Charles A. Holman, James City county, Va.; Dr. B. St. George Tucker, El Paso county, Colo.; Mrs. Blood Taliaferro, James City county, Va.; N. Beverly Tucker, Rockbridge county, Va.; William P. Tucker, Albemarle county, Va.; Mrs. Julia Tucker and Virginia Tucker, Buchanan county, Mo. Touching the residence of defendants John A. Hall, James Caskie, G. Evans, Eliza H. R. Buford, Thomas Seddon, J. A. Seddon, W. C. Seddon, A. M. Seddon, Rosa I. Rutherford, Z. W. Pickerel, J. P. Branch, and Thomas Green, it is alleged as follows: "The last twelve defendants being, as complainant is informed and believes, residents of the state of Virginia, but of what county or city complainant says he is in ignorance, and that he has been unable to ascertain the same after diligent inquiry." The application for the order is sworn to by Mr. Ellis, who deposes:

"That none of the aforesaid defendants [referring to non-residents named in the application, but whose residences are not given] can be personally served with a subpœna from the office of the clerk of this court by the marshal of the western district of Texas, and none of said defendants have voluntarily appeared to this cause. And complainant therefore prays that, owing to the large number of defendants, and to the fact that the exact residence of many of the defendants is unknown, and cannot, with reasonable diligence, be learned, and the great cost of obtaining personal service upon those whose

residences are known, * * * an order * * * that the said defendants be summoned to answer, * * * and that such service be made by publication," etc.

The affiant in the application fails to name the state or county in which any one of the non-residents resides, and simply states generally they are non-residents of the state of Texas. The application is based upon the eighth section of the act of March 3, 1875, (18 St. at Large, 470,) which is not repealed by the act of August 13, 1888, (25 St. at Large, p. 436, § 5.) So much of the eighth section of that act as it is deemed material to consider is in the following language:

"That when in any suit commenced in any circuit court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon, the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found; * * * or, where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and, in case such absent defendant shall not appear, plead, answer, or demur within the time so limited, * * * and upon proof of the service or publication of said order, * * * it shall be lawful for the court to entertain jurisdiction and proceed to the hearing and adjudication of such suit," etc.

It may be assumed, without being decided upon this *ex parte* application, that the statute, in suits of this character, authorizes an order directing absent defendants to appear, etc., and personal service of such order upon the absent defendants, or, whenever personal service is not practicable, the publication of the order. And it may be further conceded that, as the general fact of non-residence is distinctly alleged in the amended bill, and sworn to in the application, the issuance of subpœna and return "not found" are not prerequisites to the making of the application and granting the order under the statute. *Forsyth* v. *Pierson*, 9 Fed. Rep. 801. See, also, *Bronson* v. *Keokuk*, 2 Dill. 498; in which Judge DILLON inclines to the contrary view.

The only question arising upon the application which the court at present feels inclined to consider is whether the facts deposed to are sufficient to justify an order of publication. The applicant assigns his reasons for requesting the order, and they may be stated to be: (1) The number of the defendants is large. (2) The exact residence of many of the defendants is unknown, and cannot with reasonable diligence be learned. (3) The great cost of obtaining personal service upon those whose residences are known. Apart from statutory authorization, it may be said, as a general rule, that courts of equity are without power to direct service upon defendants beyond their territorial jurisdiction. Mr. Foster, in his work on "Federal Practice," mentions some of the cases where such orders have been made. But he says: "Independently of any express statutory authority, there is no power in a court of eq-

uity to order actual personal service to be effected upon a defendant beyond its territorial jurisdiction." Page 155, § 96. Legislation was evidently thought necessary by congress to supply the defects of existing law, and in 1872 an act was passed similar in many of its features to the present statute, authorizing in certain cases an order of service on nonresidents, or publication of the order, where personal service was not practicable. Speaking of that statute, Judge DILLON, in the case already referred to, says: "The act of June 1, 1872, (17 St. at Large, 198, § 13,) is the first statute enacted by congress giving to the circuit court the power to make service or acquire jurisdiction for any purpose by publication." Ordinarily in the adjudication of causes courts have before them all parties, either personally or through their representatives, whose interests are to be directly affected by the litigation; and the dictates of justice, equally the policy of the law, require their presence whenever it is practicable to obtain it. Statutes, therefore, which confer the power to proceed to an *ex parte* hearing, in the absence of personal service, as the present one does under certain circumstances, should not be construed with any degree of liberality in favor of him who seeks the exceptional mode of service. The party invoking their aid should be required to comply with the statutory conditions and limitations. If, therefore, personal service upon an absent defendant, as authorized by the eighth section of the act of 1875, be practicable in a given case, that method of notification should be pursued; and it would be no excuse for failure to do so that the expense attending the service was "great," or that the number of defendants was "large," or, in cases against several defendants, all of whom are alleged generally to be non-residents, that the residences of "many" could not be ascertained by the exercise of reasonable diligence. In the last-named category the application should distinctly state the known places of residence, and show the diligence used to ascertain the places of residence when unknown. Then the court would have before it the *data* to direct personal service in the one case and publication of the order in the other. The views entertained by Judge DILLON as to the necessity of personal service command my approval, and his observations on the subject are here inserted:

"Now, the statute provides that this order shall be served upon the absent defendant, if practicable, wherever found. The object of service is to give notice; and the superiority of personal service over constructive service in effecting this object is so manifest as to require no remark, and is recognized by the statute itself."

He further says:

"The practice under the act should be such as to secure personal service in all cases when the residence of the absent defendant is known, or can be ascertained: and to substitute or resort to constructive service by publication only where the better mode is not practicable within a reasonable time, and by the exercise of reasonable diligence." *Bronson* v. *Keokuk, supra.*

In its present form, the application must be denied; and it is so ordered.