JAMES J. BYRNE *v.* JOHN ALLEN, HENRY ALLEN, HENRY RHODES, W. H. LAMBERT, A. FEEK, B. F. DILLINGHAM and the OAHU RAILWAY AND LAND COMPANY (incorporated).

APPEAL FROM DECREE OF FIRST JUDGE, FIRST CIRCUIT COURT.

SUBMITTED OCTOBER 9, 1896.          DECIDED MARCH 4, 1897.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE PERRY, IN PLACE OF FREAR, J., DISQUALIFIED.

A creditor's bill to reach and apply in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor within these islands which cannot be come at or attached or taken on an execution in a suit at law against such debtor, is in the nature of a proceeding *in rem*, and it is not essential that personal service be made upon such debtor, if not within the jurisdiction of the court, the fixing of the debtor's personal liability not being the object of the bill. In such a case Section 1230 of the Civil Code is sufficient authority for service to be made upon the absent defendant by publication or otherwise as the court shall order.

OPINION OF THE COURT BY JUDD, C.J.
(Circuit Judge Perry dissenting.)

This is a creditor's bill for a discovery, an injunction and for an equitable attachment. The facts are succinctly as follows:

In an action at law plaintiff recovered judgment against the three first named defendants, and against the said A. Feek as garnishee, for $812 and costs. Personal service was made upon

the said garnishee, he being then in this country but at the time of filing this bill he had left these islands. The bill alleges that none of the principal judgment debtors or the defendant garnishee have any property within this Republic which can be come at or attached or taken on execution, but that there is a valid and subsisting contract whereby the Oahu Railway and Land Company, defendant corporation, has agreed, in consideration of certain labor and services of the said Feek to deliver him bonds of the said defendant corporation to the value of seven thousand dollars, upon the completion of the corporation's railroad to Kaena Point on the Island of Oahu. Service being made on the defendant corporation, its general manager answered the interrogatories propounded admitting and setting forth particularly the nature of the contract with said Feek as follows:

"The Oahu Railway and Land Company agreed, in 1895, with A. Feek, to pay as a further consideration in final settlement of all claims, seven first mortgage bonds, bearing interest at five per cent., the par value of each bond to be $1,000. Said bonds to be delivered to A. Feek or order after completion of the present line of road from Waianae to Kaena Point, Island of Oahu, or when extended to any other point on said island of equal distance. No bonds have been delivered under the agreement."

Upon affidavit that Mr. W. A. Kinney, attorney at law, was the authorized agent or attorney of the said Feek to sell the before mentioned bonds, a temporary injunction was issued against the Oahu Railway and Land Company, enjoining them from passing the said bonds to said A. Feek, and also against the said Feek and W. A. Kinney, Esq., his agent, attorney, &c., from passing, purchasing, transferring the said property of said Feek, or acknowledging any transfer in said bonds without the order of court, &c.

The plaintiff's counsel then moved, upon affidavit that said A. Feek was not within the jurisdiction of the court to be

reached by personal service, but is a resident of the United States of America, that an order of service upon him be made by publication, or in such other manner as the court shall direct. The motion was heard and denied, and appeal is taken by plaintiff to this court.

Two important questions are raised. First, Is personal service upon Feek, the judgment debtor, essential in this case? and, secondly, Is there any provision in our statutes providing for a substituted service by publication or otherwise upon a non-resident defendant in a bill in equity of this character?

In discussing the first question, we remark that this is a "creditor's bill," distinctly provided for in the Act of 1878 concerning equity jurisdiction, Compiled Laws, p. 390, viz.: "Bills by creditors to reach and apply in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor within this kingdom which cannot be come at or attached or taken on execution in a suit at law against such debtor." We have no doubt that equity had jurisdiction of creditors' bills before the enactment of this definition, under the general powers given to the chancellor and the vice-chancellor *"to hear and determine all matters in equity."* (Section 847 of the Civil Code.) The several Circuit Judges at chambers have now that jurisdiction (Sec. 37 of the Judiciary Act of 1892), and, according to Sec. 43 of the same Act, * * * * also the power "to make and award all such judgments, decrees, orders and mandates, to issue all such executions and other processes, and to take all other steps necessary for the promotion of justice in matters pending before them in chambers, and to take all other steps necessary to carry into full effect all the powers which are or may be given them by the laws of the kingdom," &c.

Now, in a creditor's bill the debt must be established by some judicial proceeding, and it must be generally shown that legal means for its collection have been exhausted. These requisites are alleged in the bill.

Whether personal service is necessary in any case will depend upon the nature of the case. If the judgment sought is a personal one within the state, personal service must be had upon defendant, or he must make voluntary appearance, in order to obtain jurisdiction of the person of the defendant and fix his personal liability. But a judgment which operates upon the property is in the nature of a proceeding *in rem,* and does not require that personal service be had.

*Quarl v. Abbett,* 120 Ind. 236.

What is sought in the case before us is an equitable attachment of Feek's interest in the bonds of the railway company when (if) issued. The property or interest involved is within the jurisdiction of the Circuit Judge, and the proceeding here is substantially a proceeding *in rem, id.* The object of the bill is not to fix Feek's personal liability; that has already been accomplished in the former suit. In the leading case of *Pennoyer v. Neff,* 95 U. S. 727, this class of cases is especially excepted from the rule that personal service must be had. In that case Judge Field says that in a larger and more general sense the term a *"proceeding in rem"* is applied to actions between parties where the direct object is to reach and dispose of property owned by them or of some interest in them. Id., p. 734. In such cases a substitute service by publication is good. See *Arndt v. Griggs,* 134 U. S. 316. "The object of notice by publication is to give the best notice practicable to non-resident defendants, and thus enable the court to fully decide the controversy respecting property within its jurisdiction, no matter what form the question may assume." *Quarl v. Abbett, supra,* p. 239. All property which ought in equity to be applied to the payment of the debt can be reached by a creditor's bill. A patent or a copyright can be reached by this means, even a right of action for injury to the debtor's property. *Hudson v. Plets,* 11 Paige, 180.

Holding as we do that personal service on Feek is not essential

in this case, the second question is whether there is any statutory authority for substituted service on an absent defendant by publication, or otherwise, on a creditor's bill.

We have already seen that equity had jurisdiction of such a bill by the Civil Code. In that code, enacted in 1859, we have in Sec. 1228 a provision that in certain cases mentioned under the title "Equity, Admiralty and Probate Matters," the applications "shall be by sworn petition addressed to some court or justice having jurisdiction thereof." We do not understand that this section is intended to confer jurisdiction upon the court in these matters and to exclude all other subjects of equity from its jurisdiction. This section does not undertake to enumerate all the classes of cases in which equity may be involved, for instance the jurisdiction of equity over trusts, to grant injunctions, to compel discovery, to dissolve partnerships and the like. All these powers may be exercised by our courts of equity without reference to this statute, because they and a large variety of other subjects are inherently matters for equity, many of which are specifically mentioned in the Act of 1878.

Sec. 1230 of the Civil Code prescribes that *"in any such case"* service may be made either by personal service, or in case the defendants cannot be found, by leaving a copy of the petition and summons with some one upon the premises involved in the controversy, or *"in such other manner as the court may direct,"* and a notice by publication may be ordered. Much is here left to the discretion of the court as to the particular method by which notice may be brought to the absent defendant. The statute does not say that the method of service prescribed applies only to the case enumerated in Sec. 1230. "In any such case" means "in any case like those mentioned," which does not limit the cases to those enumerated in Sec. 1228. Some of the provisions in Sec. 1230 have no application whatever to some of the cases mentioned in Sec. 1228. For instance, where the application is for "the affiliation of bastards," or "for enquiries of lunacy," &c., where the defendants cannot be found.

There are no "premises involved in the controversy," and therefore no service could be made by leaving a copy of the complaint and summons "upon some one upon the premises." This statute must have a reasonable and liberal construction, and with a view to enable the court to take whatever steps are necessary for the promotion of justice and to carry into effect the powers given to the court. To grant relief in a creditor's bill is one of those powers, and for its enforcement we consider the statute, Sec. 1230, broad enough to enable the court to notify the defendant Feek by publication, or as the court shall direct.

There are other and more specific statutory methods by which service by publication may be made upon defendants who, having property within our jurisdiction, have never been inhabitants of these islands, or have removed therefrom. Vide Secs. 1103-4 of the Civil Code. It is contended that these sections do not apply to suits in equity. But they appear in a chapter entitled "of the Practice of Courts of Record," and though most of the provisions of that chapter appear to be applicable solely to actions at law, other provisions confer jurisdiction upon the "Courts of Record," including courts of law, generally exercised by courts of equity, as in 1119 and 1120, where "*injunctions pendente lite*" are allowed.

It seems to us that it would not be unreasonable to hold that Sections 1103 and 1104 apply to suits in equity as well as to actions at law. The power to order service by publication is given to "Judges at Chambers" as well as to "Courts."

We prefer however to leave open the question whether *this* statute would allow publication of summons in equity matters, having found as above more specific authority for such publication in Sec. 1230. We hold, therefore, that, the object of the bill before us being to reach the property of the absent defendant and not to determine his personal liability, personal service is not essential, and substituted service may be made upon him in any of the methods authorized by Section 1230 of the Civil Code as it shall seem most applicable to the court.

The appeal is sustained and the cause is sent back to the Circuit Judge for further proceedings.

*Magoon & Edings,* for plaintiff.

*J. Q. Wood* and *L. A. Dickey,* for the Oahu Railway & Land Co., the defendant corporation.

### OPINION OF MR. JUSTICE WHITING.

In this case the plaintiff by a creditor's bill seeks in equity to have property of the principal defendant, Feek, situated within this Republic and within the jurisdiction of courts of equity of this Republic, attached and applied to the satisfaction of a judgment, heretofore obtained in the First Circuit Court of this Republic, by the plaintiff against the defendant Feek. No service of summons has been made on defendant Feek, as he is not within the Republic. The plaintiff moved the Circuit Judge for an order of publication of summons for the purpose of obtaining service thereby on defendant Feek, claiming authority therefor by our statutes; this the Judge declined and plaintiff appealed.

I agree with the opinion of the Chief Justice that in cases of this nature where the court obtains jurisdiction over the property of a judgment debtor, it may proceed to apply that property, under proper pleadings and orders, to the satisfaction of the claim of the judgment creditor, and even without personal service of process on the absent defendant, if he be without the jurisdiction of the court. *Pennoyer v. Neff,* 95 U. S. 714.

Courts of equity, however, will not proceed to a final determination of the cause before it, without causing reasonable notice to be given to the absent defendant, if possible, with an opportunity to defend, when appearance is made; and I am of opinion that there is inherent power in our courts of equity in connection with Sec. 1230 of the Civil Code, to cause notice to be given in such manner as the court may deem most efficient, even by *publication, in causes of this class,* to which class I limit my concurrence with the result arrived at by the Chief Justice.

### DISSENTING OPINION OF CIRCUIT JUDGE PERRY.

While concurring in the opinion that a creditor's bill to subject to the payment of a judgment property which cannot be reached by an execution, is, in the broader meaning of the term, a proceeding *in rem*, that in proceedings *in rem* actual personal service on the defendant is not essential, and that in such proceedings substituted service on an absent defendant, whether by publication or in any other authorized form, is sufficient, I respectfully dissent from the conclusion arrived at by the majority of this court, that the First Circuit Court in Equity has authority to order substituted service by publication or otherwise, in this case.

In my opinion, there is in this Republic no statute which authorizes constructive service of summons by publication or otherwise in an equity suit such as the one at bar, and without the aid of such statute a court of equity possesses no inherent power to order such service.

First, as to statutory authority. The only statutes which are claimed by counsel for the complainant to confer upon the court authority to order service as prayed for are Sections 1103 and 1104 of Article 46, and Section 1230 of Article 50, of the Compiled Laws.

Sections 1103 and 1104 do provide for service by publication upon non-resident defendants, but I think that they clearly apply solely to actions at law and that this is the only reasonable construction that can be given to them. The whole chapter in which those sections appear is devoted solely to actions at law, and nothing therein contained will justify the belief that the legislature intended to include suits in equity within the operation of its provisions. The reasons suggested for holding that these sections do apply to suits in equity are, (1) that the chapter is entitled "Of the Practice of Courts of Record," (2) that it confers "jurisdiction upon Courts of Record, including courts of law, generally exercised by courts of equity, as in 1119 and

1120, where injunctions *pendente lite* are allowed," and (3) that "the power to order service by publication is given to Judges at Chambers as well as to Courts." The sub-title of the chapter in question is "Of Civil Suits," under which expression less certainly is included than in the phrase, "Of the Practice of Courts of Record." The latter might very properly have included the practice in criminal proceedings, and yet it does not. Is there anything strange in the fact, then, that under the subtitle, "Of Civil Suits," only actions at law are provided for? There is nothing inconsistent in it. The title of itself cannot, it seems to me, supply the chapter with provisions which it does not either expressly or impliedly contain.

It is true that Sections 1119 and 1120 authorize "any judge of the court at chambers" to issue injunctions *pendente lite* in certain cases, and that it is in courts of equity that such injunctions are generally issued. But can it be contended for a moment that Sections 1119 and 1120 apply to suits in equity? I think not. The very words of Section 1119 definitely settle that question, for it is therein specifically stated that such injunctions may be issued by the court, upon a proper showing, *in cases of ejectment.* It is only in those cases that that power can be exercised.

The fact that, under Section 1103, service by publication may be ordered by a "judge at chambers" as well as by the "court," does not justify the conclusion that the section also applies to suits in equity, any more than does the provision, in Section 1109, that a "judge at chambers" may make an order declaring the defendant in default, lead to the belief that suits in equity are there referred to.

The sections are to be construed as a whole, jointly with the other sections of the same chapter, and each in the light of the other. With the exceptions above named, nothing in the Act has been pointed out as tending to show that equity cases are included within its scope. On the other hand, there is much to show that only actions at law are provided for. Section 1106

says: "It shall be incumbent upon every defendant served with process of summons as hereinbefore provided, within the time specified in the summons *or order of publication* to file with the clerk of the court an answer to the plaintiff's demand, either admitting all the facts stated in the petition to be true and denying that they are sufficient in law to support the plaintiff's demand, which shall form an issue of law to be determined by the court, or denying the truth of the facts stated in the petition, *which shall form an issue of fact to be determined by the jury.*" This section clearly refers to the service by publication provided for in Sections 1103 and 1104, and yet the last part of Section 1106 shows, beyond question, that all the legislature had in mind was an action at law.

A careful examination of the other sections of the chapter in question leads, it seems to me, irresistibly to the conclusion that Sections 1103 and 1104 do not refer to suits in equity.

Further, if Article 46 does direct the mode of service of process in equity cases, then Section 1230 makes an entirely unnecessary repetition of those provisions. On the contrary, I think that the existence of Section 1230 confirms the conclusion already reached by me upon the study of Article 46 itself.

It is also contended that Section 1230 itself confers the desired authority. That section reads: "When process is issued in any such case, it shall be served by delivery of a copy of the petition and of the summons to the defendants, or in case they cannot be found, by leaving such copy with some one upon the premises involved in the controversy, or in such other manner as the court or judge may direct. The officer charged with service of the process shall also, if so directed by the court or judge, publish in the Government Gazette a notice of such suit or proceeding, calling upon all persons interested to appear and show cause against it, at the time and place of the hearing."

Section 1228, which is a part of the same chapter, enumerates certain proceedings in equity which are to be instituted by sworn petition, etc. A "Creditor's Bill" is not one of the pro-

ceedings thus enumerated. But it is claimed by counsel for the complainant, that such a bill is specifically provided for in the chapter immediately proceeding Article 50, in the Compiled Laws, and that, "in such case," in Section 1230, includes all cases mentioned in said preceding chapter. It so happens, however, that Article 50 was already in existence in 1859, the date of one of our civil codes, and that said preceding chapter was not enacted until 1878, and consequently the earlier statute can possibly refer to the later one.

Again, it is claimed by counsel * * * * * * that courts of equity had, prior to the enactment of the Act of 1878, jurisdiction of creditors' bills, (in this view I concur) and that "in any such case" means "in any case like those mentioned" in Section 1228, and does not limit the cases to those enumerated therein, and that a creditor's bill is a case "like those mentioned" in that section. But I think that by the words, "in any such case," the legislature intended to refer only to those matters which are mentioned in Section 1228; that is the result, if the words are taken in their ordinary meaning. Moreover, the proceedings mentioned in Sections 1235, 1236 and 1237 are "like those mentioned" in Section 1228 and would, upon the theory that "in any such case" means "in any case like those mentioned," requires no statutory provision as to service, whether personal or otherwise, other than that contained in Section 1230; and yet those three sections (1235-6-7) do set forth specifically how service is to be made in those cases—needless repetition, if Section 1230 is broad enough to cover matters other than those named in Section 1228. In Section 1237 of the same chapter, the words "in any such case" again occur. The language of that section shows beyond a doubt that they are used solely with reference to the cases mentioned in Section 1235, i. e., suits for foreclosure of any hypothecation or other maritime lien, and that the theory in regard to "cases like those mentioned" can not possibly stand; and if not in this part of the chapter, why in the earlier section?

But even granting, for the purposes of argument, that to creditors' bills may be extended the benefit of such provisions as are contained in Section 1230, still I think that constructive service by publication is not authorized by that section. Its last sentence allows merely the publication of notice to all persons interested that the suit is pending, and such notice is undoubtedly intended to be in addition to full and complete legal service upon the defendant. The use of the word "also" in the sentence, "The officer charged with service of the process shall also \* \* \* \* \* \* publish in the Government Gazette," etc., indicates this.

The clause, "or in such other manner as the court or judge may direct," does not refer to service by publication. Applications for divorces and separations are of the matters mentioned in Section 1228, and in these proceedings the benefit of constructive service ought to be. had, if that clause just cited is as broad as it is contended to be. In spite of this, we find that in 1870, at least eleven years after the passage of the Act of which Section 1230 is a part, the legislature passed an Act (see p. 435, Compiled Laws) specifically providing for constructive service by publication in libels for divorce—needless repetition again if Section 1230 already conferred the desired authority.

This statute (Section 1230), like all statutes wherein it is sought to legalize modes of service of summons which do not in all cases necessarily result in giving actual notice to defendants of the pendency of proceedings against them, must be construed strictly and not liberally. As far as I can discover, it has been so held in every case in which the question has arisen. See 22 Am. and Eng. Encycl. Law 153; *Pollard v. Wegener*, 13 Wis. 643; *Batt v. Procter*, 45 Fed. 517; *Oswald v. Kampman*, 28 Fed. 37; *Swift v. Meyers*, 37 Fed. 45; *Galpin v. Page*, 18 Wall. 350; *Likens v. McCormick, et al.*, 39 Wis. 313. No case has been cited to the contrary.

Second, as to inherent power. At the oral argument and in

their brief, counsel for complainant, in endeavoring to show that a court of equity has inherent power to order service by publication, have relied solely upon those authorities that hold that such courts have vast and expansive power to meet new exigencies, believing, apparently, that we are now confronted with a new exigency; and no case has been cited by them wherein it has been directly held that, without the existence of a statute, the court has the power now contended for.

An examination of all the reported cases at hand which I have been able to find, discloses the fact that in almost every State of the American Union statutes have been passed providing for service by publication. This has been done, as stated in the 22 Am. and Eng. Encycl. Law p. 139, in view of the difficulties existing in securing valid service within the state. Such statutes have been held constitutional in proceedings *in rem*, and to empower the rendering of a valid judgment thereunder, so far as it affects the property attached, but in proceedings *in personam*, where the object is to fix the personal liability of the defendant, such service is of no avail, even if authorized by statute, it having been held that such statute "is violative of the provision of the constitution that no state shall deprive any person of life, liberty or property without due process of law." Ib. 140. See also *Pennoyer v. Neff*, 95 U. S. 719.

Why enact all these statutes throughout the Union if courts already possessed the desired power? Certainly in none of those states was it deemed safe to proceed without statutory authority.

There seems to be no reported case in which the precise question now involved was determined, but remarks made by courts in construing statutes on the subject indicate a very general belief that statutory authority is indispensable.

In *Lessee of M. v. Burnet*, 18 O. 543, the court said: "The defendants to the chancery suit all resided in Massachusetts, when the proceedings against them were commenced, and until after they were terminated. Jurisdiction over the person,

therefore, could not have been obtained by the issue and service of a subpoena, the usual mode of bringing defendants into court. But our statute had then, as it has had always since, a provision for making a non-resident a party defendant, and subjecting him to the operation of a decree, without personal service by subpoena, or otherwise. The act gave to the courts power to acquire jurisdiction over non-residents, (even though residents of a foreign country) for all purposes contemplated in the act by the mere publication, as it will be observed of notice in the newspapers.

"*It was indispensable* that something of the kind should be done, that some practice should be established by which non-residents * * * should be made parties to suits * * * without the service of process; for officers could not serve process without the limits of the state."

"The statute allowing substitute or constructive service, *being a departure from the common law*, must be strictly observed and its requirements carefully complied with."—22 Am. and Eng. Encycl. 153.

"Service of notice by publication, being a substitute for actual personal service *is a purely statutory right*, and is of such a nature that all the provisions of the statute must be strictly complied with, and courts will not indulge in presumptions to supply apparent defects of failure to meet the requirements of the statute."—*Hartley v. Boynton*, 17 Fed. 876.

In *Oswald v. Kampman, supra*, objection was made by one of the parties that certain proceedings were not in strict conformity to the laws of the state which provided for service by publication; and in this connection, the court said: "I am aware of the rule that when proceedings are instituted not in accordance with the common law, viz.: by actual service, that the provisions of the statute are to be strictly construed."

"In proceeding to enforce the lien of the mortgage by the sale of the property on a substituted service of summons, the court was not proceeding according to the course of the common

law, and there is no presumption in favor of its jurisdiction."—
*Swift v. Meyers, supra.*

In *Batt v. Procter, supra,* pp. 516-517, the following language is used: "Apart from statutory authorization, it may be said, as a general rule, that courts of equity are without power to direct service upon defendants beyond their territorial jurisdiction. Mr. Foster, in his work on "Federal Practice," (unfortunately this work is not at hand), "mentions some of the cases where such orders have been made. But he says: 'Independently of any express statutory authority, there is no power in a court of equity to order actual personal service to be effected upon a defendant beyond its territorial jurisdiction,' p. 155, Sec. 96. Legislation was evidently thought necessary by congress to supply the defects of existing law, and in 1872 an act was passed similar in many of its features to the present statute, authorizing in certain cases an order of service on non-residents, or publication of the order, where personal service was not practicable." See also *Arndt v. Griggs,* 134 U. S. 316; *Bennet v. Fenton,* 41 Fed. 485-487.

The motion for an order of service by publication was, in my opinion, properly denied by the lower court.

I do not touch upon the question of whether or not a court of equity can, in a suit *in rem,* acquire jurisdiction and proceed to a final determination solely upon the strength of an attachment or seizure of the property involved, without voluntary appearance of the defendant and without service of process whether personal or substituted, in view of the fact that this question was not referred to or argued by counsel at the hearing, and also because the majority of this court has already held that the lower court has authority to order substituted service of summons.